UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE No.3:18CR112 JD-MGG |
| | ) | |
| CJ CHIKA NWOKAH, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Pending and ripe before the Court is the Defendant's Emergency Motion for Release from Custody due to Defendant's Medical Condition and Infection by COVID19, which was filed upon limited appearance by Attorney Donald J. Schmid [DE 112].[1] The Government has filed its response in opposition thereto [DE 120]. The Defendant then filed a Reply Brief in Support of Emergency Motion for Relief [DE 121], and time for the Government to file a sur-reply brief has lapsed. On January 11, 2021, Attorney Schmid on behalf of the Defendant filed a Motion for Leave to File Supplement to Reply Brief in Support of Defendant's Emergency Motion for Release [DE 123]. By text only order, the Court granted leave for the Defendant's Supplement to Reply Brief and directed that it be filed instanter [DE 125].

In his motion, the Defendant by limited counsel moves for release from detention pursuant to 18 U.S.C. § 3142(i) [DE 112]. As the requested relief involves the reconsideration of an Order of Detention that was issued by the Magistrate Judge,

---

[1] Over the Government's objection, the Court granted Mr. Schmid's motion for leave to make a limited appearance for the sole purpose of presenting an emergency motion for release [DE 119].

1

Judge DeGuilio referred this matter to the undersigned for report and recommendation [DE 113]. As such, this matter is properly before the undersigned.

On September 8, 2018, this Court presided over a contested hearing on the question of pre-trial detention, and then issued an Order of Detention on September 10, 2018 [DE 9]. In its Order, the Court found that, based on the findings and analysis of the matters enumerated in the pretrial services report and as stated on the record in open court at the detention hearing, there were no conditions or combination of conditions of release would reasonably assure the appearance of the defendant as required or the safety of the community [Id.].

Subsequently, the Defendant, *pro se*,[2] filed a Motion to Reconsider Magistrate's (sic) Order of Detention [DE 87]. The Defendant based that motion on 18 U.S.C. § 3143(a), which applies to the release or detention of a defendant pending sentencing. Although the Defendant was not awaiting sentencing and the Court could have denied the motion on that basis alone, the Court considered the merits of the Defendant's motion for reconsideration of the Magistrate's Order of Detention under the provisions of 18 U.S.C. § 3142(i). However, on July 9, 2020, this Court denied the Defendant's motion for reconsideration by an Order [DE 94].

The Defendant now requests that the Court further reconsideration of this Order of Detention based on 18 U.S.C. § 3142(i). 18 U.S.C. § 3142(c) provides:

---

[2] The Order granting Attorney Donald J. Schmid's motion for leave of court to make a limited appearance for the purpose of presenting an emergency motion for release [DE 119] contains a thorough discussion of the number of attorneys who have represented the Defendant in this proceeding, and noted that the Defendant had received assistance from no less than four – now five – attorneys. There is no valid reason to re-plow that ground in this Report and Recommendation, except to note that the Defendant is proceeding *pro se* with the assistance of stand-by counsel, Philip R. Skodinski, and is receiving the assistance of Donald J. Schmid on a limited appearance for the motion currently under consideration.

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

In considering the Defendant's previous *pro se* motion for reconsideration [DE 87], the Court considered the incidence of COVID-19 cases in the St. Joseph County Jail under the "another compelling reason" rationale of 18 U.S.C. § 3142(i). The Court determined, based on the condition in the St. Joseph County Jail as of July 9, 2020, that the Defendant had failed to demonstrate a compelling reason for release. At that time, the number of coronavirus cases in the Jail were less than a handful and the Sheriff was taking appropriate cautions to avoid the inadvertent spread of COVID-19.

It was also noteworthy that the Court had already determined that there were no conditions or a combination of conditions that would reasonably assure the appearance of the defendant as required or that would protect the safety of the community [DE 10]. The Court had also found that the presumption in favor of detention under 18 U.S.C. § 3142(e)(2) applied to the Defendant due to the nature of the charges in the indictment, specifically: (1) possession with intent to deliver a mixture or substance containing heroin in violation of 21 U.S.C. § 841(a)(1); and (2) attempt to possess with intent to distribute more than 100 grams a mixture or substance containing heroin in violation of 21 U.S.C. § 841(a)(1) and § 846[3] [Id.]. As Congress has noted, drug offenders pose special flight risks because of financial resources and foreign contacts associated with drug trafficking. See, e.g., *United States v. Palmer-Contreras*, 835 F.2d 15, 17 (1st Cir. 1987). Even after determining that the presumption had been rebutted, in part, by the

---

[3] In addition, the Defendant is charged with possession of a firearm that traveled in interstate or foreign commerce while being an alien illegally and unlawfully in the United States in violation of 18 U.S.C. § 922(g)(5) [DE 10].

3

evidence adduced by the Defendant's Counsel at the Detention Hearing, this Court found that the Defendant posed a risk of flight and a danger to the community [Id.].

Notably, the Department of Homeland Security has placed an Immigration and Customs Enforcement (ICE) hold on the Defendant. As discussed in the Court's Order granting leave for Mr. Schmid to make a limited appearance [DE 119], any decision to release the Defendant may be futile because of this ICE hold. The Defendant believes that should this Court release the defendant, DHS would release its hold because of the Defendant has filed an request for asylum request.[4] As an ICE hold had already been placed on the Defendant before he requested asylum, it appears that the Defendant is pursuing a negative asylum request and, unlike a positive asylum request, the DHS does not always release individuals who are pursuing a negative asylum request. While the Defendant's motion for release in this Court may not be legally futile, it remains likely that the DHS would not release the Defendant while his asylum request is pending. However, with respect to the pending motion for release, this Court merely notes the existence of the ICE hold and does not give it any additional consideration in deciding the merits of the Defendant's request.[5]

In his motion, the Defendant states that circumstances have changed significantly since the Order of Detention [DE 10], was issued on August 7, 2020. First, the Defendant contracted coronavirus in mid-December, had a substantial fever, and needed to be housed in Jail's medical unit. Yet, he reports that he had not been seen by a doctor since testing positive for COVID-19. Furthermore, he reports that:

---

[4] As discussed in the Order of December 22, 2020, there are two methods of obtaining asylum in the United States, i.e., affirmative processing and negative processing.

[5] It should be noted, however, the Defendant's alien status was one of the factors that the Court considered when determining the Defendant's likelihood of flight at the original detention hearing of September 8, 2018.

    (1) Awakes with blood and blood clots;

    (2) Must rely frequently on inhaler; and

    (3) Has not been allowed to use a nebulizer that he needs.

Based on these assertions, the Defendant concludes that he is not receiving adequate medical care in the Jail.

    Next, the Defendant cites the worsening pandemic and incarceration conditions nationwide. The Defendant notes that the number of coronavirus cases in federal prison doubled during November and December 2020. The Defendant asserts that there is "no reason to believe that these kind of infection numbers will not be present and are not present at the Joseph County Jail at this time" [DE 121].

    While the St. Joseph County Jail had experienced very few COVID-19 cases until mid-November, its positivity rate jumped dramatically at that time. Of course, one of the major reasons for that increase was that the larger community in Northern Indiana was experiencing another large surge in coronavirus cases. In early November, the number of coronavirus cases in Indiana began to spike from an average of 1,500 cases per day to an average of 5,000 cases per day. In fact, the Indiana Department of Health reported that 8,237 Hoosiers had contracted coronavirus on November 14, 2020. This surge has continued until the present time, and 6,099 Hoosiers contracted COVID-19 on January 8, 2021.

    Clearly, since December of 2019, the world has experienced the pervasive outbreak of COVID-19. As a result of widespread cases of COVID-19, the Governor of the State of Indiana issued a public health advisory on March 6, 2020, and the President of the United States declared a national emergency on March 13, 2020. On

March 11, 2020, the World Health Organization declared a worldwide pandemic. Effective March 25, 2020, the Indiana Governor also issued a stay-at-home order to limit the spread of the coronavirus, and this order has evolved into a safer-at-home order over the following weeks and months. Beginning November 15, 2020, Governor Holcomb issued an executive order that established restrictions for counties based on their metrics of the rate of coronavirus positivity rate and its spread – counties in orange and red (the highest category) status were targeted with the largest number of restrictions to reduce the spread of the virus and to maintain hospital bed space for the most ill.

Moreover, COVID-19 remains a virulent and dangerous disease. As of January 10, 2021, more than twenty-two million Americans have contracted COVID-19, and more than 374,000 deaths are attributed to the disease. At the same time, more than 567,000 Hoosiers have contracted the disease and at least 8,985 of those have died from the disease. Furthermore, according to the Indiana Department of Health, the coronavirus positivity rate for the seven days ending on January 4, 2021, is 16.5%.

Of course, the counties within the Northern District of Indiana have also experienced a noted increase in cases. Indiana reports 25,878 cases in St. Joseph County (385 deaths), 23,709 cases in Elkhart County (344 deaths), 13,865 cases in Porter County (166 deaths), 8,310 in LaPorte County (153 deaths), and 4,791 cases in Marshall County (84 deaths). Significantly, the metrics for Elkhart County indicate a weekly case rate of 310 per 100,000 residents and positivity rate of 14.72%, which places it in the red category.

Not surprisingly, like the broader community, the St. Joseph County Jail has experienced a significant increase in coronavirus cases. However, unlike the outside community, the St. Joseph County Jail has been able to adopt and enforce a variety of preventative protocols to protect against the exposure, transmission, and spread of the COVID-19 coronavirus. The warden and the medical staff have isolated, tested and monitored all new inmates for COVID-19. Daily, the jail conducts various checks of the inmate population and its staff. The jail also uses two infrared sanitizing machines to clean areas of the jail on a daily basis. Once an inmate tests positive, the jail conducts an extensive contact tracing using jail records and video surveillance footage. To avoid the spread of the contagion, any inmate testing positive is isolated from the general population and are provided with N-95 masks. Any staff member who had contact with an inmate who tested positive is also quarantined and not allowed contact with other inmates until they have been cleared to return to work. In addition, to reduce the potential for exposure to coronavirus, the jail imposed a lockdown from late November into December 2020. Lastly, any inmates who needed more extensive medical treatment could be sent to local hospitals.

Regrettably, while housed at the St. Joseph County Jail, the Defendant was infected with the coronavirus and he reports that he continues to suffer from symptoms that make him uncomfortable. However, the Defendant has not demonstrated that his present incarceration poses a direct and concrete threat to his health. Incarceration, by its very nature, is uncomfortable and unpleasant, and it restricts an inmate's ability to have unfettered access to medical care. Yet, it does not prevent an inmate from

7

receiving appropriate medical care as needed. As noted above, the Jail's COVID-19 protocol anticipates the need for inmates to have appropriate medical treatment.

Additionally, the Court is aware that in 2019, the St. Joseph County Jail expended more than two million dollars for inmate medical care. Moreover, the United States Marshall Service has an ongoing arrangement with the Sheriff to ensure that necessary medical treatment is available to federal inmates housed at St. Joseph County Jail.

Furthermore, having been held at the Jail since September of 2018, the Defendant is familiar with the Jail's procedures. In fact, as early as September 25, 2018, the Defendant requested treatment for dental services through the Jail's medical request procedure.[6] According to the Jail medical staff, the Defendant's last request for medical treatment was made on November 15, 2018.

Recently, however, the Defendant spoke with a member of the medical staff about his need to see a physician about his use of the inhaler.[7] As a consequence of that recent discussion, the Defendant has an appointment to meet with the Nurse Practitioner on January 14, 2021, to address his request.

While the Court is not unsympathetic to the Defendant's health concerns regarding his use of inhalers for asthma, an objective review of the present circumstances and a reasonable assessment of the present level of risk faced by the Defendant lead to the conclusion that the jail is able to provide adequate medical

---

[6] With respect to federal inmates housed at the St. Joseph County Jail, an inmate would make a treatment request with the Jail medical staff. The request is then evaluated by the Jail medical staff, and the inmate is seen by a physician, a physician's assistant, or a nurse practitioner for diagnosis and a treatment plan. If the treatment plan requires medical services outside of the Jail, then the plan is referred to the USMS Prisoner Medical division. USMS Prisoner Medical then decides if the treatment is necessary, and if so, authorizes the recommended treatment.

[7] According to the jail records, the Defendant is prescribed to have his inhaler "as needed".

treatment for the Defendant, and that the jail also has can secure medical treatment for the Defendant outside of the jail as necessary. As such, the Defendant has not demonstrated an emergency that would require his release, especially when considering the Court's prior findings that the Defendant's release would pose both a risk of flight and a danger to the community.

For the reasons stated herein, the undersigned RECOMMENDS that Defendant's Emergency Motion for Release from Custody due to Defendant's Medical Condition and Infection by COVID19 [DE 112] be DENIED.[8]

Dated: January 13, 2021.

s/Michael G. Gotsch, Sr.<br>
Michael G. Gotsch, Sr.<br>
United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed.R.Crim.P. 59(b)(2). Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *United States v. Hall*, 462 F.3d 684, 689 (7th Cir. 2006) ("When a right is waived, it is not reviewable, even for plain error"). Only specific objections are reserved for appellate review. *Lockert v. Faulkner*, 843 F.2d 1015, 1018 (7th Cir. 1988); *United States v. Harris*, 470 F. App'x 504, 506 (7th Cir. 2012).